113 T.C. No. 5


UNITED STATES TAX COURT


WALTER R. STROHMAIER, Petitioner $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 13353-97.                    Filed August 3, 1999.


P was an independent agent for an insurance
brokerage firm and a part-time minister. P was not
provided an office by the insurance brokerage firm; he
was not required to report to or visit the brokerage
firm office, nor did he conduct any business there. P,
as a minister, was not affiliated with any church. He
served as chaplain for a mobile home community, where
he performed religious services. Occasionally, P
delivered sermons or taught at various churches. In
neither activity did P receive or interview insurance
customers or religious patrons at his residence, nor
did he perform ministerial services there. P's
insurance activity was conducted by visiting clients at
their homes or other locations. P performed all the
preparatory work for both activities at his residence,
a rented apartment.

1. Held, although a portion of P's residence was
used exclusively and regularly in his two activities,
the residence was not his principal place of business.
Accordingly, the home office expenses are not

deductible. See sec. 280A(c)(1)(A), I.R.C.; Commissioner v. Soliman, 506 U.S. 168, 175-177 (1993).

2. Held, further, the car and truck expenses incurred by P between his residence and the places where he conducted religious services and the car and truck expenses between his residence and the first and last place of insurance customer contact each day are not deductible as transportation expenses but are nondeductible commuting expenses. See secs. 262, 162(a), I.R.C.; Wisconsin Psychiatric Servs. v. Commissioner, 76 T.C. 839, 849 (1981); Curphey v. Commissioner, 73 T.C. 766, 777-778 (1980); Heuer v. Commissioner, 32 T.C. 947, 953 (1959), affd. per curiam 283 F.2d 865 (5th Cir. 1960); Walker v. Commissioner, 101 T.C. 537 (1993), distinguished.

3. Held, further, expenses incurred for meals, in the absence of overnight lodging, are not deductible as travel expenses away from home under sec. 162(a)(2), I.R.C., where the meal expenses incurred are occasioned by the taxpayer's rests to accommodate a medical condition. See United States v. Correll, 389 U.S. 299 (1967); Barry v. Commissioner, 54 T.C. 1210 (1970), affd. per curiam 435 F.2d 1290 (1st Cir. 1970).

Walter R. Strohmaier, pro se.

Robert W. Dillard, for respondent.

OPINION

PARR, Judge: This case was assigned to Special Trial Judge D. Irvin Couvillion pursuant to section 7443A(b)(3)[1] and Rules 180, 181, and 182. The Court agrees with and adopts the Opinion of the Special Trial Judge, which is set forth below.

_____

[1]Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

OPINION OF THE SPECIAL TRIAL JUDGE

COUVILLION, Special Trial Judge:  Respondent determined deficiencies of $766 and $1,954 in petitioner's Federal income taxes for the years 1993 and 1994, respectively.

The issues for decision are:  (1) Whether petitioner is entitled to a home office deduction under section 280A(c) for the year 1994 in connection with his trade or business activities; (2) whether petitioner is entitled, under section 162(a), for the years 1993 and 1994, to deductions for car and truck expenses in excess of amounts allowed by respondent; and (3) whether petitioner is entitled, under section 162(a)(2), for the years 1993 and 1994, to deductions for travel expenses in excess of amounts allowed by respondent.[2]

Some of the facts were stipulated.  Those facts, with the exhibits annexed thereto, are so found and are incorporated herein by reference.  At the time the petition was filed, petitioner's legal residence was Lake Wales, Florida.

---

[2]At trial, petitioner conceded respondent's disallowance of Schedule C meal expenses of $212 and $113, respectively, for 1993 and 1994.  Other adjustments in the notice of deficiency are computational and will be resolved by the Court's holdings on the contested issues.  These adjustments are increases in petitioner's self-employment taxes, the deduction allowable for one-half of self-employment taxes, and the amounts of petitioner's earned income credit.

Petitioner was engaged as an independent contractor in two trade or business activities during the years at issue: a ministerial activity and an insurance sales activity.

The insurance activity consisted of the sales of various types of insurance to senior citizens. The various categories of insurance petitioner offered included insurance for long-term care, supplementary Medicare benefits, home health care, annuities, and life insurance. Petitioner was affiliated with an insurance brokerage firm from which petitioner was provided a customer list of insured persons. From this list, petitioner serviced policy holders having problems or questions regarding their coverage, and he endeavored to sell them other coverage they did not have. Any applications for such insurance were taken by petitioner, who then forwarded the applications to the insurance brokerage firm for processing and the ultimate issuance of insurance by an insurance provider. The insurance brokerage firm was located approximately 50 miles from petitioner's residence. Petitioner was not provided an office by the brokerage firm, nor was he required to report or visit the office of the brokerage firm. None of petitioner's work was conducted at the brokerage firm's office. Petitioner worked out of his home, which was an apartment he rented at Lake Wales, Florida. He worked at hours of his choice. Petitioner's means of getting business was contacting individuals listed on the customer list

provided by the brokerage firm or responding to individuals who had service requests on their existing coverage. Petitioner did not receive or interview clients at his apartment. Instead, petitioner went out and met with potential clients. Petitioner did not employ anyone to assist him in his activity. As petitioner explained at trial:

> The agency [the brokerage firm] had sufficient business on the books that I could cultivate business from my home by simply looking at the records * * *. I would make a phone call or I would show up at the person's house. But when I went to that individual's house, I already knew what he had. And I had a proposal in my attache case saying, this is what I'm going to sell that individual, which was homework done at my home office.
>
>        *       *       *       *       *       *       *
>
> my position * * * is that the business is a home-based business, in that the majority of the paperwork, the grunt work, is done prior to going out to a client's home. And, because there is no structured territory or structured requirements, since I am totally independent, my understanding of the Internal Revenue Code is that this qualifies as a home business.

Petitioner performed services as a minister for approximately 6 months each year, essentially during the winter and spring. Petitioner was not affiliated with a particular church. His ministerial activity consisted of serving as a chaplain to a mobile home community located approximately 35 miles from Lake Wales, Florida. That community consisted of people petitioner referred to as "snowbirds", which he defined as

people from the northern United States who came to Florida each year for the winter and spring months.  Petitioner conducted services there twice weekly.  Petitioner also taught at First Baptist Church of Orlando, Florida, weekly and, in addition, occasionally preached at various churches.  All of petitioner's sermons were prepared at his home office.  No services or other sacerdotal rites were performed at petitioner's apartment, nor did he ever receive or counsel religious patrons there.

On his Federal income tax returns for 1993 and 1994, petitioner's income and expenses from his insurance and ministerial activities were combined and reported on Schedule C, Profit or Loss From Business.  The following income and expenses were reported:

|  |  | 1993 | 1994 |
|---|---|---|---|
| Gross income |  | $20,144.89 | $30,421 |
| Expenses: |  |  |  |
| Advertising | $502 |  | $427 |
| Car & truck expenses | 13,990 |  | 16,828 |
| Commissions & fees | 661 |  | -- |
| Legal & professional | 179 |  | 304 |
| Office expenses | 388 |  | 73 |
| Taxes & licenses | 86 |  | -- |
| Travel | 4,106 |  | 4,977 |
| Meals & entertainment: |  |  |  |
| 80% | 274 |  | -- |
| 50% | -- |  | 152 |
| Other expenses | -- |  | 2,313 |
| Total |  | 20,186.00 | 25,074 |
| Tentative profit (loss) |  | (41.11) | 5,347 |
| Expenses for business use of home |  | -- | 532 |
| Net profit (loss) |  | ($41.11)* | $4,815 |

*Rounded to $42 on return.

In the notice of deficiency, respondent disallowed the following expenses:

|                                | 1993    | 1994    |
| ------------------------------ | ------- | ------- |
| Car & truck                    | $1,193  | $1,239  |
| Travel                         | 4,056   | 4,927   |
| Meals & entertainment          | 212     | 113     |
| Expenses for business use of home | --   | 532     |

As noted earlier, respondent made computational adjustments, flowing from the above, to petitioner's self-employment taxes, the deduction for one-half of such taxes, and the earned income credit claimed by petitioner.  As also noted earlier, petitioner conceded at trial the $212 and $113 disallowed meals and entertainment expenses claimed respectively for 1993 and 1994.

As shown above, petitioner claimed car and truck expenses of $13,990 and $16,828, respectively, for 1993 and 1994.  On Schedule C of the return for 1993, petitioner based the $13,990 claimed on 49,302 business miles.  Petitioner stated on the return that he had no commuting mileage that year and 2,594 additional miles for other purposes.  In the notice of deficiency, respondent determined that petitioner had 45,702 business miles for 1993 instead of 49,302 miles claimed on the return.  Respondent allowed a deduction of $12,797 at the rate of 28 cents per mile and disallowed $1,193, the balance of the amount claimed for 1993.  On the 1994 return, petitioner based

the $16,828 claimed on 57,355 business miles.  That same return also stated that petitioner had no commuting mileage during 1994 and an additional 3,019 miles for other purposes.  In the notice of deficiency, respondent determined that petitioner had 53,755 business miles during 1994 instead of 57,355 miles claimed on the return.  Respondent allowed a deduction of $15,589 at the rate of 29 cents per mile and disallowed $1,239, the balance of the amount claimed for 1994.  For both years, the allowable business mileage determined by respondent represented a disallowance of 3,600 miles for each year from the amounts claimed by petitioner on his tax returns.  At trial, counsel for respondent stated that the disallowed mileage represented mileage that respondent determined to be commuting mileage by petitioner with respect to his ministerial and insurance activities.  As to the insurance activity, respondent determined that petitioner incurred commuting mileage from his residence to his first destination and from his last destination to his residence.  The disallowed commuter mileage also included the mileage from petitioner's residence to and from the areas where petitioner was involved in his ministerial activity.

Petitioner has not challenged the formula or the method by which respondent determined the 3,600 disallowed business miles for each year at issue.  Petitioner contends that his principal place of business for both the insurance and ministerial

activities was his home; consequently, the disallowed mileage constituted business mileage.[3]

The first issue is whether petitioner is entitled to a home office deduction of $532 for 1994.  Petitioner contends his apartment was his principal place of business.  Respondent disputed this assertion.

Under section 162(a), a taxpayer is permitted to deduct all ordinary and necessary expenses paid or incurred in carrying on a trade or business.  Under section 280A(c)(1)(A), however, deductions associated with a home office are generally disallowed unless the home office was used exclusively and regularly as the principal place of business of the taxpayer.  Respondent does not dispute that petitioner used a portion of his apartment exclusively and regularly in his business activities but denies

---

[3]The Court notes that the standard mileage rates used by respondent in allowing petitioner's business mileage were 28 cents and 29 cents per mile, respectively, for 1993 and 1994. Petitioner did not challenge the mileage rate used by respondent. The 49,302 business miles claimed by petitioner on his 1993 return, at 28 cents per mile, would amount to $13,804.56; yet, the amount petitioner claimed on his return was $13,990.  For 1994, the 57,355 business miles claimed by petitioner on that return, at 29 cents per mile, would amount to $16,632.95; yet, the amount claimed by petitioner on his return was $16,828.  It appears to the Court that, since petitioner has not questioned the allowable mileage rate for each year, either he miscalculated the amount on his returns or included in his car and truck expenses other items that were not disclosed or addressed at trial.  These discrepancies were not raised as an issue by petitioner.

that petitioner's residence constituted the principal place of business for his two activities.

Where a taxpayer's business is conducted in part in the taxpayer's residence and in part at another location, the following two primary factors are considered in determining whether the home office qualifies under section 280A(c)(1)(A) as the taxpayer's principal place of business:  (1) The relative importance of the functions or activities performed at each business location, and (2) the amount of time spent at each location.  See Commissioner v. Soliman, 506 U.S. 168, 175-177 (1993).

Whether the functions or activities performed at the home office are necessary to the business is relevant but not controlling, and the location at which goods and services are delivered to customers generally will be regarded as an important indicator of the principal place of a taxpayer's business, which must be given great weight and is a principal consideration in most cases.  See id. at 175, 176.  The relative importance of business activities engaged in at the home office may be substantially outweighed by business activities engaged in at another location.  The Supreme Court has explained as follows:

> If the nature of the business requires that its
> services are rendered or its goods are delivered at a
> facility with unique or special characteristics, this
> is a further and weighty consideration in finding that
> it is the delivery point or facility, not the
> taxpayer's residence, where the most important
> functions of the business are undertaken.

Id. at 176.

Petitioner contends that virtually all the work he did with respect to his insurance clients was done at home to determine what insurance coverage a customer had and the additional coverage such customer might need. His visit to each customer was to close the deal. As the Court views the situation, however, the visit by petitioner to each customer to close a transaction represented the most important function of petitioner's activity because, no matter how much preparatory work was done by petitioner at home, none of this work was of any value unless the customer agreed to buy the insurance proposed by petitioner. Petitioner made no sales either at home or by telephone. The visit to each customer was to consummate a transaction. The consummation of the transaction constituted the delivery point or the facility at which the goods or services were delivered. If a customer declined the offered insurance, all of the preparatory work by petitioner was for naught. There would be no delivery. In relative terms, therefore, the most important function or activity of petitioner was his visit to

each customer where the transaction with such customer was consummated. The record does not show how many hours he worked at home compared to the hours he visited his clients. The preparatory work at petitioner's home, while necessary and relevant, was not controlling.

With respect to petitioner's ministerial activity, petitioner's sermons and other services were not offered at his apartment. The delivery of those services occurred away from his apartment. While petitioner prepared and researched his topics or sermons at home, the most significant function of his activity was the delivery of his services to the places where his patrons or followers were located. The preparation for his services at his apartment, while certainly relevant and necessary, was secondary to the delivery of the services.

The Court, therefore, sustains respondent on the disallowance of the home office expense claimed by petitioner for 1994.

The second issue is whether petitioner is entitled, under section 162(a), to deductions for car and truck expenses in excess of amounts allowed by respondent. As noted earlier, respondent determined that petitioner incurred 3,600 commuting miles for each year at issue and, therefore, disallowed car and truck expenses of $1,193 and $1,239, respectively, for 1993 and 1994.

It is well settled that, as a general rule, the expenses of traveling between one's home and his place of business or employment constitute commuting expenses which are nondeductible, personal expenses. See sec. 262; Fausner v. Commissioner, 413 U.S. 838 (1973); Commissioner v. Flowers, 326 U.S. 465 (1946); Feistman v. Commissioner, 63 T.C. 129 (1974); Sullivan v. Commissioner, 1 B.T.A. 93 (1924).

This Court has previously held that "a taxpayer's cost of transportation between his residence and local job sites may be deductible if his residence serves as his 'principal place of business' and the travel is in the nature of normal and deductible business travel." Wisconsin Psychiatric Servs. v. Commissioner, 76 T.C. 839, 849 (1981); see Curphey v. Commissioner, 73 T.C. 766, 777-778 (1980); Heuer v. Commissioner, 32 T.C. 947, 953 (1959). Petitioner's residence was not his principal place of business.

The Court notes, however, that, in Walker v. Commissioner, 101 T.C. 537 (1993), the taxpayer was allowed to deduct transportation expenses incurred between his residence and local, temporary job sites. In Walker, the taxpayer's residence was considered his "regular" place of business rather than his "principal" place of business. However, the conclusion in Walker was based on a concession of the issue by the Commissioner based on Rev. Rul. 90-23, 1990-1 C.B. 28. This revenue ruling has

subsequently been amended to reflect existing case law, as articulated above. See Rev. Rul. 94-47, 1994-2 C.B. 18. Since petitioner's residence was not his "principal place of business", it follows that the expenses relating to the disallowed mileage for each year constitutes commuting expenses that are not deductible. Respondent is sustained on this issue.

The third issue is petitioner's entitlement to deductions for travel expenses for 1993 and 1994 in connection with his insurance and ministerial activities. Petitioner claimed $4,106 and $4,977, respectively, for 1993 and 1994, for travel expenses. In the notice of deficiency, respondent allowed petitioner a deduction of $50 for each year based on one out-of-town overnight trip by petitioner each year. Respondent determined that the disallowed amounts, $4,056 and $4,927, respectively, for 1993 and 1994, did not represent travel away from home, and, therefore, such amounts were not deductible. Petitioner agreed that, as to the amounts at issue, he was not away from home overnight and did not obtain lodging in connection with those expenses. The disallowed amounts represented costs of meals petitioner incurred in connection with his two business activities.

Petitioner contends that he incurred the meal expenses because he suffered with a medical condition, apnea, which required that he take rest periods during the day. As a result, his work day, in each of the instances he sustained such

expenses, was much longer than normal, and he, therefore, sustained the cost of these meals on his extended work days. Petitioner contends that, because he was required to rest during the course of his work day, he is entitled to a deduction for the expenses at issue.

Section 162(a)(2) permits the deduction of traveling expenses, including meals, while away from home in the pursuit of a trade or business. For a taxpayer to be considered "away from home" within the meaning of section 162(a)(2), the Supreme Court has held that the taxpayer must be on a trip requiring sleep or rest. See United States v. Correll, 389 U.S. 299 (1967). In Barry v. Commissioner, 54 T.C. 1210 (1970), affd. per curiam 435 F.2d 1290 (1st Cir. 1970), this Court applied the Correll rule in disallowing expenses for meals claimed by a taxpayer on 1-day business trips that extended from 16 to 19 hours during which the taxpayer rested briefly once or twice in his automobile but always returned home without incurring an expense for lodging. This Court held, in Barry, that the rest period required for the deductibility of travel expenses requires a rest of sufficient duration in time that necessitates the securing of lodging, and that a mere pause in the daily work routine does not satisfy the requirements of section 162(a)(2). The rationale for allowance of the deduction in such cases is the taxpayer's significantly higher expenses incurred by reason of the lodging. See United

States v. Correll, supra at 304-305.  On the other hand, where no
lodging expense is incurred, the meal expenses incurred by the
taxpayer do not add to the taxpayer's business expenses because
such expenses result from the sort of rest that anyone can, at
any time, without special arrangement and without special
expense, take in his own automobile or office.  See Barry v.
Commissioner, supra at 1213; see also Siragusa v. Commissioner,
T.C. Memo. 1980-68, affd. without published opinion 659 F.2d 1062
(2d Cir. 1981).  The fact that petitioner's rests were
necessitated by a medical condition does not render his meal
expenses deductible as travel expenses.  In Barry v.
Commissioner, 435 F.2d at 1291, the Court stated:

> The Commissioner's rule, known as the overnight rule,
> and approved in United States v. Correll, * * *, is
> particularly aimed at formulating an objective test
> which will obviate individual analysis of countless
> factual variations * * *.  Nor does [the] taxpayer
> qualify as one obliged to sleep or rest simply because
> the length of his trip tired him, and he stopped by the
> side of the road for a brief nap. * * *  The rule
> requires a stop of sufficient duration that it would
> normally be related to a significant increase in
> expenses.  * * *  [Emphasis added.]

See Chappie v. Commissioner, 73 T.C. 823, 830 (1980).  Under
Barry v. Commissioner, supra, the factual variation suggested by
petitioner does not entitle him to a deduction of his travel

expenses for 1993 and 1994 in the absence of lodging.  Respondent is sustained on this issue.

Decision will be entered for respondent.