T.C. Memo. 2001-45


UNITED STATES TAX COURT


AZIZ A. TOKH AND SUSAN K. TOKH, Petitioners $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 169-00.               Filed February 27, 2001.


Aziz A. and Susan K. Tokh, pro se.

Jennifer L. Nuding and William E. Bogner, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, Judge:  For 1996 and 1997, respondent determined deficiencies in petitioners' Federal income tax of $14,018 and $10,850 and penalties under section 6662(a) of $1,329.60 and $877.20, respectively.  By amendment to the answer, respondent asserts increased penalties under section 6662(a) in the amounts of $863.40 and $605.80 for 1996 and 1997, respectively.

After concessions, the issues for decision are:
(1) Whether, pursuant to section 162(a), petitioners are entitled to deductions in the amounts claimed for unreimbursed employment expenses; (2) whether, pursuant to section 212, petitioners are entitled to deductions in the amounts claimed for investment expenses; (3) whether, pursuant to section 170, petitioners are entitled to deductions in the amounts claimed for charitable contributions; (4) whether, pursuant to section 212, petitioners are entitled to a deduction in the amount claimed for expenses attributable to real property held for the production of income; (5) whether, pursuant to section 280A(c)(1), petitioners are entitled to deductions for expenses attributable to an office in the home; and (6) whether, pursuant to section 6662(a), petitioners are liable for penalties due to negligence or disregard of rules or regulations.  Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

                          FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference.

At the time of the filing of the petition, petitioners resided in Elmhurst, Illinois.  Aziz A. Tokh (petitioner) is an architect at Northeast Illinois Railroad Corporation (NIRC), and

Susan K. Tokh is a registered nurse at Elmhurst Memorial Hospital.

Petitioners claimed the following miscellaneous deductions for unreimbursed expenses associated with their employment:

|  | 1996 | 1997 |
|---|---|---|
| Petitioner |  |  |
| Work equipment & tools | $ 500 | $ 500 |
| Supplies | 300 | 250 |
| Printing | 750 | 750 |
| Safety shoes | 300 | 167 |
| Mud boots | 160 | 133 |
| Susan K. Tokh |  |  |
| Uniforms | 1,200 | 1,200 |
| Hospital scrubs | 450 | 450 |
| Shoes | 480 | 480 |
| Hosiery | 1,800 | 1,750 |
| Laundry services | 1,250 | 1,500 |
| Both |  |  |
| Licenses, dues, publications, books, and classes | 313 | 662 |
| Total | $7,503 | $7,842 |

Several of the items claimed as unreimbursed employment expenses were based on estimates made by petitioners. Specifically, petitioners made estimates for employment expenses allegedly incurred by petitioner for work equipment and tools ($10 per week for 50 weeks in both years), supplies ($6 and $5 per week for 50 weeks in 1996 and 1997, respectively), printing ($15 per week for 50 weeks in both years), safety shoes (two pairs at $150 each in 1996), and mud boots (two pairs at $80 each in 1996). Petitioners also made estimates for employment expenses allegedly incurred by Susan K. Tokh for uniforms (six at $200 each in both years), hospital scrubs (six sets at $75 each

in both years), shoes (four pairs at $120 each in both years), hosiery ($36 and $35 per week for 50 weeks in 1996 and 1997, respectively), and laundry services ($25 and $30 per week for 50 weeks in 1996 and 1997, respectively).  Although the remaining claimed deductions for unreimbursed employment expenses were not based on estimates, petitioners did not maintain any receipts, records, or logbooks to prove that these expenses were actually incurred.

Petitioners owned shares of 15 different mutual funds in 1996 and 16 different mutual funds in 1997.  Each mutual fund passed income through to its shareholders on a net basis, i.e., gross income minus operating expenses.  In annual reports distributed to the shareholders, each mutual fund disclosed the annual operating expenses incurred by the fund.  The annual operating expenses are paid by the mutual funds and are not expenses of the shareholders.  Petitioners claimed investment expense deductions for a pro rata portion of the annual operating expenses of the mutual funds.  Petitioners also claimed $220 in 1996 for Individual Retirement Account (IRA) maintenance fees.

Petitioners estimate that they spent $2.25 per week for 50 weeks on weekend issues of the Chicago Tribune.  Petitioners also estimate that they sent four letters per year for each different mutual fund and that they spent $40.32 per letter for typing and mailing.  Petitioners claimed investment expense deductions equal

to their estimated costs for newspapers and letters. In addition, petitioners claimed other miscellaneous deductions in 1997 of $64 for Reader's Digest publications, $30 for Newsweek publications, and $25 for issues of a local newspaper. In the notice of deficiency, respondent allowed total combined deductions for employment, investment, and other miscellaneous expenses equal to $760 in 1996 and $5,149 in 1997.

Petitioner is a Moslem. Petitioners claimed charitable deductions for cash contributions to an Islamic Culture Center (ICC) and several mosques equal to $13,750 in 1996 and $14,930 in 1997. Petitioners calculated the deduction as an "estimate" of $225 per week for 50 weeks. Petitioners also claimed deductions for charitable transportation costs of $1,840 in both years and cash contributions to other charities equal to $145 in 1997. The charitable transportation costs were based on trips between petitioners' home and the ICC and mosques. In addition, petitioners claimed that they donated over 300 items of used clothing and household devices to the Cancer Federation and Military Order of the Purple Heart. Petitioners created "receipts" for these contributions that total $680 for 1996 and $891 for 1997. The "receipts" were on forms provided by the charities, but the lists of items and values were attached by petitioners. Petitioners claimed deductions for contributions of used clothing and household items equal to $680 in 1996 and

$1,394 in 1997.  In the notice of deficiency, petitioners were allowed a deduction for cash contributions equal to $1,300 and noncash contributions equal to $340 in 1996.  In 1997, petitioners were allowed a combined deduction for cash and noncash contributions of $1,439.

As beneficiaries of a land trust, petitioners owned a condominium that they rented to tenants during 1996.  Petitioners were allowed a deduction for expenses relating to the condominium totaling $4,411 for repairs, advertising, legal fees, taxes, utilities, trust fees, and association fees.  Petitioners claimed additional deductions associated with the rental of the condominium totaling $10,378, which include estimates for auto and travel expense, cleaning, insurance, management fees, additional repairs, supplies, and collection fees.  The amounts claimed for payments to petitioners' son totaling $1,400 were claimed twice, as management fees and as cleaning expenses.

As part of his employment at NIRC, petitioner is provided with an office containing a desk, computer, and telephone. Petitioner also maintains an office in the family home where he keeps a drafting table, drafting equipment, and reference books. Besides working at the office at NIRC and the office in the home, petitioner also spends time at various job sites.  Sixty percent of his working hours is spent in the NIRC office, and 40 percent of his hours is spent working at home or in the field.

Petitioner has 24-hour access to the office at NIRC. NIRC does not require petitioner to maintain an office in the home. Petitioners did not keep receipts or records for any of their expenses associated with the office in the home, and petitioners used an inflated basis in calculating depreciation expenses. Petitioners claimed deductions for expenses relating to maintaining the office in the home in 1996 and 1997.

On their 1991, 1994, and 1995 Federal income tax returns, petitioners claimed deductions for estimated employment expenses, investment expenses, charitable contributions, and office in the home expenses that are similar to those claimed during the years in issue. Petitioners prepared all of the tax returns themselves without the assistance of a paid tax return preparer. Respondent examined petitioners' 1991 income tax return and issued a notice of deficiency. Petitioners filed a timely petition with the Court, and, on October 20, 1994, a stipulated decision was entered.

## OPINION

Respondent argues that petitioners are not entitled to the deductions claimed on their returns because petitioners did not provide any substantiation for the amounts reported. Petitioners assert that they are entitled to the claimed deductions; however, for the most part, they offered no books or records to prove that they expended the amounts in question. Only petitioner Aziz A.

Tokh appeared at trial.  For the most part, his uncorroborated testimony was inherently unlikely and not credible.

Unreimbursed Employment Expenses

Petitioners claim that they are entitled to miscellaneous deductions of $7,503 in 1996 and $7,842 in 1997 for unreimbursed employment expenses for work equipment and tools, supplies, printing, clothing, footwear, laundry services, licenses, dues, publications, books, and classes.  A trade or business expense deduction is not allowable to an employee to the extent that the employee is entitled to reimbursement from an employer.  See Heidt v. Commissioner, 274 F.2d 25 (7th Cir. 1959), affg. T.C. Memo. 1959-31; Lucas v. Commissioner, 79 T.C. 1, 7 (1982).  The cost of acquisitions and maintenance of clothing and footwear is deductible as a trade or business expense if the item is (1) specifically required as a condition of employment, (2) is not adaptable to general usage, and (3) is exclusively worn for employment purposes.  See Yeomans v. Commissioner, 30 T.C. 757, 767 (1958).  If taxpayers establish that deductible expenses were incurred but do not establish the amount allowable, the Court may estimate the amount allowable, bearing heavily upon the taxpayers.  See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930).

Other than the testimony of petitioner, there is no evidence that the alleged expenses were incurred by petitioners.  We are

not required to accept a taxpayer's uncorroborated testimony, and we decline to do so here.  See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).  Furthermore, petitioners have failed to show that they were not entitled to reimbursement from their employers for the claimed deductions.  Therefore, the record does not sustain a deduction for unreimbursed employment expenses in excess of what respondent has already allowed.

Investment Expenses

Petitioners claim that they are entitled to investment expense deductions for their pro rata share of the annual operating expenses incurred by the mutual funds in which they owned shares.  Petitioners also claim investment expense deductions for their alleged IRA maintenance, newspaper, magazine, and letter-writing costs.  Section 212 allows a deduction for all ordinary and necessary expenses paid or incurred for management, conservation, or maintenance of property held for the production of income.

The annual operating expenses for the mutual funds are expenses of the individual funds and are not expenses of petitioners.  Publicly offered mutual funds pass through income to shareholders on a net basis, i.e., gross income minus operating expenses.  Therefore, petitioners have already received the benefit of a reduction in income for these costs and are not allowed to deduct the operating expenses as investment expenses.

With regard to the alleged newspaper, magazine, letter-writing, and IRA maintenance costs, there is no credible evidence that these costs were incurred.  Furthermore, although newspapers and magazines could have been useful in connection with petitioners' employment or investment activities, petitioners have not shown that these publications were principally used for employment or investment activities rather than for personal activities.  See Wallendal v. Commissioner, 31 T.C. 1249, 1252 (1959).  They are not entitled to deductions claimed for these items.

Charitable Contributions

Petitioners argue that they are entitled to charitable deductions for alleged cash contributions made to several religious organizations and for used clothing contributions to other local charities.  In addition, petitioners claim that they are entitled to deduct their transportation expenses for trips between their home and the religious organizations.  Section 170 allows a deduction for charitable contributions made for religious purposes.  For monetary contributions, taxpayers must maintain canceled checks, receipts from the donee organizations showing the date and amount of the contributions, or other reliable written records showing the name of the donee, date, and amount of the contribution.  See sec. 1.170A-13(a)(1), Income Tax Regs.

Petitioner testified that a fundamental principle of the Moslem faith is to make charitable contributions each year equal to 2.5 percent of an individual's possessions. Petitioners argue that the amounts claimed are roughly equal to 2.5 percent of their possessions.

Petitioners have failed to meet the substantiation requirements of section 1.170A-13(a)(1), Income Tax Regs., because they did not produce any records that would identify the recipient or prove that the contributions were actually made. Therefore, petitioners are not entitled to deductions for monetary contributions in excess of the amounts already allowed by respondent. Neither are petitioners entitled to deduct their travel expenses of commuting between their home and the ICC or mosques. Travel expenses related to attending religious functions are personal in nature and are not deductible as charitable contributions. See Churukian v. Commissioner, T.C. Memo. 1980-205.

Where a charitable contribution is made in property other than money, a deduction is allowed for the fair market value of the property at the time of contribution. See sec. 1.170A-1(c)(1), Income Tax Regs. Petitioners attached "receipts" to their Federal income tax returns that included descriptions and estimated fair market values for over 300 items donated to the Cancer Federation and the Military Order of the Purple Heart.

The "receipts" were contemporaneously created by petitioners on forms provided by the charities without specification of the items donated at the time that the donations were made. Respondent argues that these receipts are inadequate because they do not show the original cost, age, or condition of the donated items. Petitioner was unable to cure any defects in the documentation by his testimony.

Petitioners' claimed deductions of $680 in 1996 and $1,394 in 1997 for the donated items. However, the lists of items for 1997 total only $891. We conclude that the self-generated "receipts" are unreliable. Petitioners are not entitled to deductions for noncash charitable contributions in excess of the amounts already allowed by respondent.

Rental Property Expenses

Petitioners claimed deductions in excess of the amount allowed by respondent for expenses attributable to the condominium that they held for rental purposes in 1996. Respondent conceded that petitioners are entitled to deductions equal to $4,411 for rental property expenses. For the remainder of the alleged expenses, petitioners either failed to produce receipts and records to substantiate their claims or petitioners produced receipts that appear to relate to petitioners' private residence rather than to the condominium.

Section 212 provides a deduction for all ordinary and necessary expenses paid or incurred with respect to management, conservation, and maintenance of property held for the production of income, including real property rental. See also sec. 1.212-1(h), Income Tax Regs. However, because the record is void of adequate receipts or records that would substantiate petitioners' claimed expenses, petitioners are not entitled to deductions in excess of the amount already conceded by respondent.

Office in the Home Expenses

Petitioners claim that they are entitled to a deduction for maintaining an office in their home. Section 280A(a) prohibits deductions "with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence." Nonetheless, taxpayers may deduct expenses attributable to the business use of their home if they qualify under one of the exceptions to this prohibition. Section 280A(c)(1) provides:

> SEC. 280A. DISALLOWANCE OF CERTAIN EXPENSES IN
>       CONNECTION WITH BUSINESS USE OF HOME, RENTAL OF
>       VACATION HOMES, ETC.
>
>       (1) Certain Business Use.--Subsection (a)
> shall not apply to any item to the extent such
> item is allocable to a portion of the dwelling
> unit which is exclusively used on a regular
> basis--
>
>             (A) [as] the principal place of business
>       for any trade or business of the taxpayer,
>
>       *       *       *       *       *       *       *

In the case of an employee, the preceding sentence shall apply only if the exclusive use referred to in the preceding sentence is for the convenience of his employer.

In deciding whether a residence is the principal place of business, it must be compared to all of the other places where business is transacted.  See Commissioner v. Soliman, 506 U.S. 168, 174 (1993) (superseded in part by statute on another issue for tax years beginning after 1998).  A deduction is allowed only when the residence is the most important or significant place for the business.  The two primary considerations are the relative importance of the activities performed at each business location and the time spent at each place.  See id. at 175.  The relative importance of business activities engaged in at the office in the home may be substantially outweighed by business activities engaged in at another location.  See Strohmaier v. Commissioner, 113 T.C. 106, 112 (1999).

For an architect, drafting is an important function of the taxpayer's trade or business.  Petitioner uses the office in his residence to perform most of the drafting required by his employment.  However, petitioner testified that he spends 60 percent of his working hours in the office at NIRC, and the remainder of his time is split between working in the field or in the office in the home.  The record does not show what functions were performed by petitioner at the other locations.  Because a

comparison of the functions performed at the other locations yields no definitive answer, and because petitioner spends a small amount of time in the office in the home relative to the remainder of his working hours, the office in the home is not the principal place of business.  Therefore, petitioners fail to meet the requirements of section 280A(c)(1)(A).  Furthermore, because NIRC does not require petitioner to maintain an office in the home and because the NIRC office building is available for petitioner to use 24 hours a day, petitioner does not maintain the office in the home for the convenience of his employer. Thus, petitioners are not entitled to deductions for the alleged expenses of maintaining the office in the home.

Penalties

Section 6662(a) and (b)(1) imposes a penalty equal to 20 percent of the portion of the underpayment that is attributable to negligence or disregard of rules or regulations. Negligence is defined as a lack of due care or failure to do what a reasonable or ordinarily prudent person would do under similar circumstances.  See Neely v. Commissioner, 85 T.C. 934, 947 (1985).  Negligence also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly.  See sec. 1.6662-3(b)(1), Income Tax Regs.

The deductions for unsubstantiated estimated expenses, duplicate deductions of amounts paid to their son, and deductions

not authorized by law (such as transportation for charitable purposes) show a pattern of negligence and disregard of the applicable rules or regulations. Petitioners were put on notice during the audit of their 1991 income tax return that they were not entitled to deductions for estimated expenses or for expenses that were not substantiated by receipts and records. Petitioners are well-educated individuals who knew or should have known that proper record keeping is essential to their entitlement to deductions. Petitioner testified at trial that he was aware of the record keeping obligations, that he was too busy to comply with them, and that he would not change his methodology. With respect to the claimed investment deductions for expenses of the mutual funds, petitioners ignored information in their annual reports that showed that income was reported on a net basis and that they were not entitled to a deduction for the operating expenses. Petitioners claimed the deductions mentioned above without consulting an accountant or attorney. Their actions are not the actions of reasonable and ordinarily prudent persons. Thus, petitioners are liable for penalties under section 6662(a) for both years in issue.

We have considered all remaining arguments made by petitioners for a result contrary to that expressed herein, and, to the extent not discussed above, they are irrelevant or without merit.

To reflect the foregoing and the concessions of the parties,

<u>Decision will be entered</u>

<u>under Rule 155</u>.