T.C. Summary Opinion 2006-183


UNITED STATES TAX COURT


KEVIN J. & CRYSTAL A. SHOEMAKER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 21275-04S.                    Filed November 22, 2006.


Kevin J. Shoemaker and Crystal A. Shoemaker, pro sese.

<u>James H. Harris, Jr.</u>, for respondent.


    CHIECHI, <u>Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.[1]  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

---

    [1]Hereinafter, all section references are to the Internal Revenue Code in effect for the year at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency of $3,076 in petitioners' Federal income tax (tax) for their taxable year 2002.

The issues remaining for decision are:

(1) Are petitioners entitled to deduct certain claimed expenses relating to their automobile?  We hold that they are not.

(2) Are petitioners entitled to deduct certain claimed meal expenses?  We hold that they are not.

(3) Are petitioners entitled to deduct certain claimed cellular telephone expenses?  We hold that they are not.

(4) Are petitioners entitled to deduct certain claimed pager expenses?  We hold that they are not.

(5) Are petitioners entitled to deduct certain claimed clothing expenses?  We hold that they are not.

(6) Are petitioners entitled to deduct certain claimed union dues in excess of the amount allowed by respondent?  We hold that they are not.

(7) Are petitioners entitled to deduct certain claimed tool expenses in excess of the amount allowed by respondent?  We hold that they are not.

## Background

Some of the facts have been stipulated and are so found except as stated herein.

At all relevant times, including throughout 2002 and at the time they filed the petition in this case, petitioners resided in Keyser, West Virginia (Keyser). Mr. Shoemaker lived in Keyser, where he grew up, for personal reasons; he liked living in Keyser, and he wanted to raise his family there.

During 2002, Mr. Shoemaker, an electrician, was employed as a subforeman by Freestate Electrical Construction Company (Freestate) located in Beltsville, Maryland. On each day Mr. Shoemaker worked for Freestate during 2002, he drove in the morning from petitioners' residence in Keyser to a job site (job site location) and returned in the evening to petitioners' residence.

Petitioners filed a tax return for their taxable year 2002 (petitioners' 2002 return). In Schedule A-Itemized Deductions included as part of that return (2002 Schedule A), petitioners claimed, inter alia, certain unidentified "Job Expenses and Most Other Miscellaneous Deductions" (job expenses) totaling $35,558 prior to the application of the two-percent floor imposed by section 67(a).

As required by section 67(a), petitioners reduced the $35,558 of total job expenses claimed in the 2002 Schedule A by two percent of their adjusted gross income (i.e., by $1,946). In determining the taxable income reported in petitioners' 2002 return, petitioners deducted the balance (i.e., $33,612), as well

as the other itemized deductions claimed in the 2002 Schedule A that were not subject to the two-percent floor imposed by section 67(a).

Respondent issued to petitioners a notice of deficiency (notice) for their taxable year 2002. In that notice, respondent, inter alia, disallowed $33,415.43[2] and allowed $2,142.57 of the total $35,558 of job expenses that petitioners claimed in the 2002 Schedule A prior to the reduction required by section 67(a). Of the $2,142.57 allowed in the notice, $1,865.39 was for union dues and $277.18 was for tool expenses. In the notice, respondent reduced the $2,142.57 that respondent allowed by two percent of petitioners' adjusted gross income (i.e., by $1,946) and permitted petitioners to deduct the balance (i.e., $196.57) as job expenses.

## Discussion

Petitioners bear the burden of proving that the determinations in the notice are erroneous.[3] Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Moreover, deductions are a matter of legislative grace, and petitioners bear the burden of

---

[2]In the notice, respondent rounded to the nearest dollar the dollar amount of the disallowed job expense deduction.

[3]Petitioners do not claim that the burden of proof shifts to respondent under sec. 7491(a). In any event, petitioners have failed to establish that they satisfy the requirements of sec. 7491(a)(2). On the record before us, we find that the burden of proof does not shift to respondent under sec. 7491(a).

proving entitlement to any deduction claimed.  INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).  Petitioners were required to maintain records sufficient to establish the amount of any deduction claimed.  Sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

As we understand their position, petitioners contend that, prior to the application of the two-percent floor imposed by section 67(a), they are entitled to deduct $27,752.75 for the use of their automobile (which includes $1,186.75 for parking fees and tolls), $8,576 for meals, $498.34 for two cellular telephones (cell phones), $175.76 for a pager, $444.42 for certain items of clothing, an unspecified amount in excess of the amount allowed by respondent for union dues, and an unspecified amount in excess of the amount allowed by respondent for tools.[4]  Respondent counters that petitioners have failed to carry their burden of establishing their entitlement to any of the deductions that they are claiming.

A taxpayer is entitled to deduct all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business, sec. 162(a), including "travel-

---

[4]We note that, prior to the application of the two-percent floor imposed by sec. 67(a), the total (i.e., $39,589.84) of (1) the respective total amounts of the different categories of expenses that petitioners claim here (i.e., $37,447.27) and (2) the amount of job expenses allowed by respondent in the notice (i.e., $2,142.57) is greater than the total amount of job expenses (i.e., $35,558) that petitioners claimed in the 2002 Schedule A prior to the reduction required by sec. 67(a).

ing expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business", sec. 162(a)(2). For a taxpayer to be considered "away from home" within the meaning of section 162(a)(2), the taxpayer must be on a trip that requires the taxpayer to stop for sleep or a substantial period of rest. See United States v. Correll, 389 U.S. 299 (1967); Strohmaier v. Commissioner, 113 T.C. 106, 115 (1999). A taxpayer generally is not allowed a deduction "for personal, living, or family expenses." Sec. 262(a). In general, expenses relating to the use of an automobile that a taxpayer pays or incurs while commuting between the taxpayer's residence and the taxpayer's place of business or employment are not deductible because such expenses are personal, and not business, expenses. See, e.g., Commissioner v. Flowers, 326 U.S. 465, 472-473 (1946); see also secs. 1.162-2(e), 1.262-1(b)(5), Income Tax Regs.

For certain kinds of expenses otherwise deductible under section 162(a), such as business expenses while traveling away from home and business expenses relating to "listed property", as defined in section 280F(d)(4),[5] a taxpayer must satisfy certain

---

[5]As pertinent here, the term "listed property" is defined in sec. 280F(d)(4) to include any passenger automobile used as a means of transportation, unless excepted by sec. 280F(d)(4)(C) or(5)(B), and any cellular telephone (or other similar telecommu-
(continued...)

substantiation requirements set forth in section 274(d) before such expenses will be allowed as deductions.

In order for petitioners' claimed respective expenses relating to the use of their automobile, cell phones, and pager and for meals to be deductible, such expenses must satisfy the requirements of not only section 162(a) but also section 274(d). To the extent that petitioners carry their burden of showing that the respective expenses relating to the use of their automobile, cell phones, and pager and for meals satisfy the requirements of section 162(a) but fail to satisfy their burden of showing that such expenses satisfy the recordkeeping requirements of section 274(d), petitioners will have failed to carry their burden of establishing that they are entitled to deduct such expenses, regardless of any equities involved. See sec. 274(d); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

The recordkeeping requirements of section 274(d) will preclude petitioners from deducting expenditures otherwise allowable under section 162(a) relating to the use of their

-----

[5](...continued)
nications equipment). Sec. 280F(d)(4)(A)(i), (v). Petitioners contend that during 2002 Mr. Shoemaker drove a passenger automobile when he traveled to and from the job site locations to which he was assigned by his employer Freestate. On the record before us, we find that petitioners' automobile, which is not subject to any of the exceptions in sec. 280F(d)(4)(C) or (5)(B), petitioners' cell phones, and petitioners' pager are listed property within the meaning of sec. 280F(d)(4).

automobile, cell phones, and pager and for meals unless they
substantiate the requisite elements of each such expenditure or
use. See sec. 274(d); sec. 1.274-5T(b)(1), Temporary Income Tax
Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). A taxpayer is required
to

> substantiate each element of an expenditure or use
> * * * by adequate records or by sufficient evidence
> corroborating his own statement. Section 274(d) con-
> templates that a taxpayer will maintain and produce
> such substantiation as will constitute proof of each
> expenditure or use referred to in section 274. Written
> evidence has considerably more probative value than
> oral evidence alone. In addition, the probative value
> of written evidence is greater the closer in time it
> relates to the expenditure or use. A contemporaneous
> log is not required, but a record of the elements of an
> expenditure or of a business use of listed property
> made at or near the time of the expenditure or use,
> supported by sufficient documentary evidence, has a
> high degree of credibility not present with respect to
> a statement prepared subsequent thereto when generally
> there is a lack of accurate recall. Thus, the corrobo-
> rative evidence required to support a statement not
> made at or near the time of the expenditure or use must
> have a high degree of probative value to elevate such
> statement and evidence to the level of credibility
> reflected by a record made at or near the time of the
> expenditure or use supported by sufficient documentary
> evidence. The substantiation requirements of section
> 274(d) are designed to encourage taxpayers to maintain
> the records, together with documentary evidence, as
> provided in paragraph (c)(2) of this section [1.274-5T,
> Temporary Income Tax Regs.].

Sec. 1.274-5T(c)(1), Temporary Income Tax Regs., 50 Fed. Reg.
46016-46017 (Nov. 6, 1985).

The elements that a taxpayer must prove with respect to any
listed property are: (1)(a) The amount of each separate expendi-
ture with respect to such property and (b) the amount of each

business use based on the appropriate measure, e.g., mileage for automobiles and time for cellular phones, of such property; (2) the time, i.e., the date of the expenditure or use with respect to any such property; and (3) the business purpose for an expenditure or use with respect to such property.  Sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

The elements that a taxpayer must prove with respect to an expenditure for traveling away from home on business, including meals, are:  (1) The amount of each such expenditure for traveling away from home, except that the daily cost of the traveler's own breakfast, lunch, and dinner may be aggregated; (2) the time of each such expenditure, i.e., the dates of departure and return for each trip away from home and the number of days away from home spent on business; (3) the place of each such expenditure, i.e., the destinations or locality of travel, described by name of city or town or other similar designation; and (4) the business purpose of each such expenditure, i.e., the business reason for the travel or the nature of the business benefit derived or expected to be derived as a result of travel.  Sec. 1.274-5T(b)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46014-46015 (Nov. 6, 1985).

In lieu of substantiating the actual amount of any expenditure relating to the business use of a passenger automobile, a

taxpayer may use a standard mileage rate established by the Internal Revenue Service (standard mileage rate). See sec. 1.274-5(j)(2), Income Tax Regs.; Rev. Proc. 2001-54, sec. 5.02, 2001-2 C.B. 530, 532. The standard mileage rate is to be multiplied by the number of business miles traveled. Rev. Proc. 2001-54, sec. 5.02, 2001-2 C.B. at 532. The standard mileage rate for 2002 was 36.5 cents per mile. Id. sec. 2.01(1), 2001-2 C.B. at 530. The use of the standard mileage rate establishes only the amount deemed expended with respect to the business use of a passenger automobile. Sec. 1.274-5(j)(2), Income Tax Regs. The taxpayer must still establish the amount (i.e., the business mileage), the time, and the business purpose of each such use. Id.

In lieu of substantiating the actual amount spent for a meal while traveling away from home on business, a taxpayer may use an amount computed at the Federal meal and incidental expense (M&IE) rate set forth in Appendix A of 41 C.F.R. chapter 301 (Appendix A) for the locality of travel for each calendar day that the taxpayer is traveling away from home on business. See sec. 1.274-5(j)(1), Income Tax Regs.; Rev. Proc. 2001-47, secs. 3.02(1)(a), 4.03, 2001-2 C.B. 332, 333-334 (applicable to, inter alia, Jan. 1 through Sept. 30, 2002); Rev. Proc. 2002-63, secs. 3.02(1)(a), 4.03, 2002-2 C.B. 691, 693-694 (applicable to, inter alia, Oct. 1 through Dec. 31, 2002). The use of the M&IE estab-

lishes only the daily amount deemed spent for meals while traveling away from home on business. Sec. 1.274-5(j)(1), Income Tax Regs. The taxpayer must still establish the time, the place, and the business purpose of the daily expenditures for meals. Id.

In support of their position that they are entitled for their taxable year 2002 to deduct job expenses in excess of the amount allowed by respondent, petitioners rely on, inter alia, two documents. The first document (document one) is a 12-page calendar for 2002, with one page for each month of that year. For each month in document one, Mr. Shoemaker made entries[6] on certain days of the respective job site locations at which petitioners claim he worked, the respective miles that petitioners claim he drove between petitioners' residence and such job site locations, and the respective parking fees and tolls that petitioners claim he paid.[7] For each month in document one, Mr. Shoemaker made entries that he claims were the respective totals of the daily entries of the number of days worked, the miles that petitioners claim he drove between petitioners' residence and the job site locations at which petitioners claim he worked, and the

---

[6]Mr. Shoemaker initially testified that during 2002 he made entries on a daily basis in document one. He changed his testimony on cross-examination. During cross-examination, Mr. Shoemaker testified that during 2002 he made entries on a weekly basis in document one.

[7]Mr. Shoemaker labeled the daily entries for parking fees and tolls "Toll" or "T".

parking fees and tolls that petitioners claim he paid.[8]

The total amount of miles for 2002 of 72,746 that petitioners claim Mr. Shoemaker drove for business, as reflected in document one,[9] is inconsistent with and contradicted by the total amount of miles for 2002 of 43,001 that petitioners claim Mr. Shoemaker drove for business, as reflected in certain other evidence. Such other evidence consists of two receipts for service (automobile service receipts) that petitioners introduced into the record as evidence of such total amount of miles. The automobile service receipts are for service during 2002 on a black 2001 Dodge Dakota truck (Dodge truck) that petitioners claim Mr. Shoemaker drove during 2002 between petitioners' residence and his job site locations. The first automobile service

---

[8]Certain of the claimed monthly totals that Mr. Shoemaker entered in document one are not accurate. For example, for February 2002, Mr. Shoemaker made entries showing the total number of days worked, the total miles that petitioners claim he drove between petitioners' residence and the job site locations at which petitioners claim he worked, and the total parking fees and tolls that petitioners claim he paid as 27 days, 6,156 miles, and $85.90. However, the actual respective monthly totals of the daily amounts that Mr. Shoemaker entered in document one for February 2002 for such items are 24 days, 5,472 miles, and $76.

[9]We have used as the total miles for 2002 that petitioners claim Mr. Shoemaker drove for business, as reflected in document one (i.e., 72,746), the total of the daily entries that Mr. Shoemaker made in document one for the respective miles that petitioners claim Mr. Shoemaker drove each month during 2002 between petitioners' residence and the respective job site locations at which petitioners claim Mr. Shoemaker worked. See supra note 8.

receipt, dated January 30, 2002,[10] is from Jiffy Lube and showed an odometer reading as of that date of 65,189 miles. The second automobile service receipt, dated December 27, 2002, is from Wal-Mart Tire & Lube Express and showed an odometer reading as of that date of 108,190 miles. Thus, the automobile service receipts showed that the total miles that the Dodge truck was driven during the period January 30 through December 27, 2002, was 43,001. In contrast, document one showed that Mr. Shoemaker claims he drove a total of 72,746 miles for business during 2002, a difference of almost 30,000 miles.[11] We question the accuracy of document one. We shall not rely on it to establish petitioners' position with respect to any of the expenses for which they claim deductions for 2002.

The second document (document two) on which petitioners rely to support their position that they are entitled for their taxable year 2002 to deduct job expenses in excess of the amount allowed by respondent is nothing more than a listing of the total

---

[10]The parties stipulated that the first automobile service receipt is dated June 30, 2002. That stipulation is clearly contrary to the facts that we have found are established by the record, and we shall disregard it. See Cal-Maine Foods, Inc. v. Commissioner, 93 T.C. 181, 195 (1989). The record establishes, and we have found, that the first automobile service receipt is dated Jan. 30, 2002.

[11]The automobile service records cover only Jan. 30 through Dec. 27, 2002. Assuming arguendo that we were to accept as reliable the entries for miles that Mr. Shoemaker made in document one on days in 2002 not covered by the automobile service records, such entries total only 6,764 miles.

amount of expenses that petitioners are claiming for each category of expense at issue. Mr. Shoemaker testified that petitioners' accountant prepared document two after the Internal Revenue Service contacted petitioners to request documentation regarding petitioners' 2002 return. We shall not rely on document two to establish petitioners' position with respect to any of the expenses for which they claim deductions for 2002.[12]

Claimed Automobile Expenses

In general, expenses relating to the use of an automobile that a taxpayer pays or incurs while commuting between the taxpayer's residence and the taxpayer's place of business or employment are not deductible under section 162(a). See, e.g., Commissioner v. Flowers, 326 U.S. at 472-473; see also secs. 1.162-2(e), 1.262-1(b)(5), Income Tax Regs. Nonetheless, such expenses may be deductible under section 162(a) where paid or incurred "away from home", sec. 162(a)(2), or, even if not paid or incurred away from home within the meaning of section 162(a)(2), where paid or incurred for business, and not personal, reasons.[13]

Petitioners concede, and we have found, that during 2002 Mr. Shoemaker did not stay overnight at his claimed job site loca-

---

[12]To the extent that other evidence corroborates the respective listings shown in document two for each category of expense at issue, we shall address below such corroborative evidence.

[13]See, e.g., Daiz v. Commissioner, T.C. Memo. 2002-192; Epperson v. Commissioner, T.C. Memo. 1985-382.

tions but instead returned in the evenings to petitioners' residence in Keyser.  Petitioners do not contend, and the record does not establish, that during 2002 Mr. Shoemaker's daily roundtrips between petitioners' residence and his claimed job site locations required him to stop for sleep or a substantial period of rest. See United States v. Correll, 389 U.S. 299 (1967); Strohmaier v. Commissioner, 113 T.C. at 115.

On the instant record, we find that petitioners have failed to carry their burden of establishing that during 2002 the expenses relating to Mr. Shoemaker's use of petitioners' automobile that petitioners claim he incurred while traveling from petitioners' residence to his claimed job site locations were incurred while he was away from home within the meaning of section 162(a)(2).

Although petitioners have failed to establish that the expenses at issue relating to Mr. Shoemaker's use of petitioners' automobile were incurred while he was away from home within the meaning of section 162(a)(2), as discussed above, petitioners may nonetheless be entitled to deduct such expenses under section 162(a) if they were incurred for business, and not personal, reasons.  Petitioners concede that during 2002, and at all other relevant times, they resided in Keyser solely for personal, and not business, reasons.  Petitioners do not contend, and the record does not establish, that during 2002 Mr. Shoemaker worked

in or around Keyser where petitioners resided. Mr. Shoemaker's decision to drive from petitioners' residence in Keyser to his claimed job site locations arose solely from petitioners' personal choice to live in Keyser. Petitioners could have chosen to reduce their automobile expenses by living closer to Mr. Shoemaker's claimed job site locations. They did not do so for personal reasons.

On the instant record, we find that petitioners have failed to carry their burden of establishing that during 2002 the expenses relating to Mr. Shoemaker's use of petitioners' automobile that petitioners claim he incurred while traveling from petitioners' residence to his claimed job site locations were incurred for business, and not personal, reasons.[14]

On the record before us, we find that petitioners have failed to carry their burden of establishing that they are entitled for their taxable year 2002 to the deduction under section 162(a) that they claim for expenses relating to Mr. Shoemaker's use of their automobile.[15]

_____

[14]See, e.g., Daiz v. Commissioner, supra; Epperson v. Commissioner, supra.

[15]Assuming arguendo that petitioners had established the deductibility under sec. 162(a) of the claimed expenses relating to Mr. Shoemaker's use of their automobile, they would still have to satisfy the requirements of sec. 274(d). We concluded above that we shall not rely on document one or document two to establish petitioners' position with respect to any of the claimed expenses, including the expenses relating to Mr. Shoemaker's use

(continued...)

Claimed Meal Expenses

In general, expenses paid or incurred for a taxpayer's daily meals while the taxpayer is not away from home within the meaning of section 162(a)(2) are not deductible.  See United States v. Correll, supra; Barry v. Commissioner, 54 T.C. 1210, 1214 (1970), affd. per curiam 435 F.2d 1290 (1st Cir. 1970).

Petitioners concede, and we have found, that during 2002 Mr. Shoemaker did not stay overnight at his claimed job site locations but instead returned in the evenings to petitioners' residence in Keyser.  Petitioners do not contend, and the record does not establish, that during 2002 Mr. Shoemaker's daily roundtrips between petitioners' residence and his claimed job site locations required him to stop for sleep or a substantial period of rest. See United States v. Correll, supra; Strohmaier v. Commissioner, 113 T.C. at 115.

On the instant record, we find that petitioners have failed to carry their burden of establishing that during 2002 the meal expenses that petitioners claim Mr. Shoemaker incurred while traveling from petitioners' residence to his claimed job site

_____

[15](...continued)
of petitioners' automobile for which they claim a deduction for 2002.  On the record before us, we find that petitioners have failed to carry their burden of establishing all of the elements that they must prove in order to satisfy the requirements under sec. 274(d) applicable to the claimed expenses relating to Mr. Shoemaker's use of petitioners' automobile.  See sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

locations were incurred while he was away from home within the meaning of section 162(a)(2).

On the record before us, we find that petitioners have failed to carry their burden of establishing that they are entitled for their taxable year 2002 to the deduction under section 162(a)(2) that they claim for meal expenses.[16]

Claimed Cell Phone Expenses

A taxpayer is entitled to deduct expenses for the use of a cell phone if such expenses constitute ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business.  Sec. 162(a).

Petitioners are claiming a deduction for the expenses relating to two cell phones used during 2002, one of which Mr. Shoemaker used (Mr. Shoemaker's cell phone) and the other of which Ms. Shoemaker used (Ms. Shoemaker's cell phone).  Mr.

---

[16]Assuming arguendo that petitioners had established the deductibility under sec. 162(a)(2) of the claimed meal expenses, they would still have to satisfy the requirements of sec. 274(d). We concluded above that we shall not rely on document one or document two to establish petitioners' position with respect to any of the claimed expenses, including the meal expenses for which they claim a deduction for 2002.  Petitioners did not offer any other evidence in support of their position with respect to such meal expenses.  The record does not even establish whether petitioners used the applicable M&IE rate for 2002.  On the record before us, we find that petitioners have failed to carry their burden of establishing all of the elements that they must prove in order to satisfy the requirements under sec. 274(d) applicable to the claimed meal expenses.  See sec. 1.274-5T(b)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46014-46015 (Nov. 6, 1985).

Shoemaker testified that during 2002 he used Mr. Shoemaker's cell phone to call his union hall to obtain job referrals and to determine the location of his claimed job site locations. Mr. Shoemaker also admitted at trial that during 2002 he used Mr. Shoemaker's cell phone for personal reasons. We found Mr. Shoemaker's testimony regarding the extent of his claimed business use of Mr. Shoemaker's cell phone to be vague, general, and conclusory. Petitioners do not contend, and the record does not establish, that Ms. Shoemaker used Ms. Shoemaker's cell phone for anything other than personal reasons.

On the record before us, we find that petitioners have failed to carry their burden of establishing that they are entitled for their taxable year 2002 to the deduction under section 162(a) that they claim for cell phone expenses.[17]

_____

[17]Assuming arguendo that petitioners had established the deductibility under sec. 162(a) of the claimed cell phone expenses, they would still have to satisfy the requirements of sec. 274(d). We concluded above that we shall not rely upon document one or document two to establish petitioners' position with respect to any of the claimed expenses, including the cell phone expenses for which they claim a deduction for 2002. In addition to document one, document two, and Mr. Shoemaker's testimony, petitioners rely on ten invoices (cell phone invoices) totaling $375.16 from U.S. Cellular for cell phone service charges during 2002. The cell phone invoices do not establish all of the elements that petitioners must prove in order to satisfy the requirements under sec. 274(d)(4). See sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985). On the record before us, we find that petitioners have failed to carry their burden of establishing all of the elements that they must prove in order to satisfy the requirements under sec. 274(d) applicable to the claimed expenses deduction for 2002. See sec.

(continued...)

Claimed Pager Expenses

A taxpayer is entitled to deduct expenses for the use of a pager if such expenses constitute ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business.  Sec. 162(a).

Mr. Shoemaker admitted at trial that during 2002 he used the pager in question solely to allow Ms. Shoemaker to contact him in the event of personal emergencies.

On the record before us, we find that petitioners have failed to carry their burden of establishing that they are entitled for their taxable year 2002 to the deduction under section 162(a) that they claim for pager expenses.[18]

_____

[17](...continued)
1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

[18]Assuming arguendo that petitioners had established the deductibility under sec. 162(a) of the claimed pager expenses, they would still have to satisfy the requirements of sec. 274(d). We concluded above that we shall not rely upon document one or document two to establish petitioners' position with respect to any of the claimed expenses, including the pager expenses for which they claim a deduction for 2002.  In addition to document one and document two, petitioners rely on two invoices (pager invoices) totaling $175.76 from All-Ways Communications, LLC, for pager service charges during 2002.  The pager invoices do not establish all of the elements that petitioners must prove in order to satisfy the requirements under sec. 274(d)(4).  See sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).  On the record before us, we find that petitioners have failed to carry their burden of establishing all of the elements that they must prove in order to satisfy the requirements under sec. 274(d) applicable to the claimed pager expenses. See sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg.
(continued...)

Claimed Clothing Expenses

Articles of clothing, including shoes or boots, are deduct-
ible under section 162(a) only if the clothing is required in the
taxpayer's employment, is not suitable for general or personal
wear, and is not worn for general or personal purposes.  Yeomans
v. Commissioner, 30 T.C. 757, 767-768 (1958).

The record establishes that the items of clothing for which
petitioners claim a deduction for their taxable year 2002 consist
of jeans, shirts, gloves, hats, and Wolverine boots.

On the instant record, we find that petitioners have failed
to carry their burden of establishing that the jeans, shirts,
gloves, hats, and Wolverine boots in question were required in
Mr. Shoemaker's employment, were not suitable for general or
personal wear, and were not worn for general or personal pur-
poses.

On the record before us, we find that petitioners have
failed to carry their burden of establishing that they are enti-
tled for their taxable year 2002 to the deduction under section
162(a) that they claim for certain clothing.[19]

---

[18](...continued)
46016 (Nov. 6, 1985).

[19]Assuming arguendo that petitioners had established that
the expenditures for the clothing in question were otherwise
deductible under sec. 162(a), on the record before us, we find
that petitioners have failed to carry their burden of establish-
ing that they spent $444.42, the clothing expense deduction that
(continued...)

Claimed Union Dues

A taxpayer is entitled to deduct expenses for union dues if such expenses constitute ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business.[20]  Sec. 162(a).

The only evidence that petitioners introduced into the record relating to petitioners' claimed union dues is document two.  We concluded above that we shall not rely upon document two to establish petitioners' position with respect to any of the claimed expenses, including the union dues for which they claim a deduction for 2002.  In any event, the total amount of union dues that petitioners claimed in document two is $1,865.39, the amount that respondent allowed.

On the record before us, we find that petitioners have failed to carry their burden of establishing that they are entitled for their taxable year 2002 to the deduction that they claim

---

[19](...continued)
they are claiming for 2002 for such clothing.  The receipts that petitioners introduced into the record relating to the items of clothing in question total only $385.48.

[20]It is not altogether clear whether petitioners are claiming that they are entitled to deduct an amount for union dues in excess of $1,865.39, the amount allowed by respondent.  The record does not disclose the amount that petitioners claimed as a deduction for union dues in petitioners' 2002 return.  On brief, respondent does not indicate that there is any amount of union dues at issue.  However, we shall proceed on the assumption that petitioners are claiming a deduction for their taxable year 2002 for an unspecified amount of union dues in excess of the amount allowed by respondent.

for an unspecified amount of union dues in excess of the amount allowed by respondent.

Claimed Tool Expenses

A taxpayer is entitled to deduct expenses for tools if such expenses constitute ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business.[21]  Sec. 162(a).

The evidence that petitioners introduced into the record relating to petitioners' claimed tool expenses consists of document one, document two, nine receipts that appear to total $278.54 that petitioners claim Mr. Shoemaker spent for tools purchased during 2002,[22] and the testimony of Mr. Shoemaker.  We

---

[21]It is not altogether clear whether petitioners are claiming that they are entitled to deduct an amount for tool expenses in excess of $277.18, the amount allowed by respondent in the notice.  The record does not disclose the amount that petitioners claimed as a deduction for tool expenses in petitioners' 2002 return.  On brief, respondent does not indicate that there is any amount of tool expenses at issue.  However, at trial, petitioners presented receipts that appear to total $278.54 (claimed tool receipts) that petitioners claim Mr. Shoemaker spent for tools purchased during 2002, which is greater than the amount allowed by respondent.  Two of the claimed tool receipts that petitioner introduced into the record are illegible in certain material respects, and one of those illegible receipts includes the purchase of dog food.  Another claimed tool receipt is for a "camp chair".  We shall proceed on the assumption that petitioners are claiming a deduction for their taxable year 2002 for an unspecified amount of tool expenses in excess of the amount allowed by respondent.

[22]The parties stipulated that the receipts were from Sears, Tractor Supply Company, Rite Aid, Total Image, and Quality Farm and Country.  However, one of the receipts also is from Lowe's.

concluded above that we shall not rely upon document one or document two to establish petitioners' position with respect to any of the claimed expenses, including the tool expenses for which they claim a deduction for 2002. In any event, the total amount of tool expenses that petitioners claimed in document two is $277.18, the amount that respondent allowed.[23]

On the record before us, we find that petitioners have failed to carry their burden of establishing that they are entitled for their taxable year 2002 to the deduction that they claim for tool expenses in excess of the amount allowed by respondent.

We have considered all of the parties' contentions and arguments that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

To reflect the foregoing and the concession of respondent,

<u>Decision will be entered under Rule 155</u>.

---

[23]Although the total amount of tool expenses that petitioners claim in document two is $277.18, the amount that respondent allowed, the claimed tool receipts appear to total $278.54, which is $1.36 more than the tool expense amount that respondent allowed. Had respondent not allowed petitioners tool expenses of $277.18, on the record before us, we would not have been able to find that petitioners' tool expenses during 2002 totaled that amount. See <u>supra</u> note 21.